448 P.2d 910

**INTERMOUNTAIN LUMBER COMPANY,**
a corporation, Plaintiff and Appellant,

v.

**Richard DANIELS, dba Wasatch Flooring
Co., Defendants and Respondents.**

· No. 11210.

Supreme Court of .Utah.

Dec. 24, 1968.

Barker & Ryberg, James L. Barker, Jr., Salt Lake City, for appellant.

Coombs & Daines, Robert W. Daines, Brigham City, for respondents.

HENRIOD, Justice:

Appeal from a no cause of action judgment by the court, without a jury. Affirmed. Costs to defendant.

Plaintiff was a supplier of lumber. Defendant bought some from plaintiff on a sort of running account over about a two-year period. A balance accrued in favor of plaintiff in the sum of about $5,000. On being pressed for payment, defendant, in December, 1963, got together with Mr. Simondson, president of plaintiff, took a look at the latter's books, struck a balance

due and paid plaintiff exactly what plaintiff claimed was due and owing, by signing a promissory note with interest, payable in the future.

There was a question of sales tax pending at the time. Nonetheless the account was marked paid in full when the note was paid. Although plaintiff accepted the defendant's money in full payment of the account, thereafter the State Tax Commission furnished plaintiff with an audit of his accounts, concluded that plaintiff owed some $800 sales tax which it had not collected for sales to defendant, which plaintiff paid. Thereafter, and only thereafter, the plaintiff filed a complaint against defendant alleging the common count for "goods, wares and merchandise" sold. This was simply a complaint in indebitatus assumpsit. Thereafter, the defendant invoked the discovery process under the rules, asked some questions, confronted plaintiff with a photocopy of the note marked paid in full. Thereafter, and only thereafter, the plaintiff, apparently without following the provisions of Rule 15, Utah Rules of Civil Procedure, since an answer had been filed, amended its complaint, changed its whole theory of assumpsit to one sounding somewhat in equity, a brand new theory, to recover the amount paid on behalf of the defendant, the real debtor to the State, not to the plaintiff. Before and upon payment by plaintiff of the amount requested by the Tax Commission, there is no evidence in the record of any protest by plaintiff being made to the Tax Commission, and there was no notification by either the Tax Commission or by plaintiff to the defendant as to any hearing on the matter. The amount paid by the plaintiff to the Tax Commission was voluntary and in the light of its amended complaint, was officious, without the knowledge or consent of the defendant, who, so far as the record is concerned, had no opportunity to state his position to either, and had no opportunity to assert any defense he may have had with respect to tax liability. Plaintiff was not a creditor of defendant, although it may have been responsible, as an agent, to collect the tax for the State.

The plaintiff's whole case, as reflected by the pleadings and proof, was bottomed on a deceit practiced by the defendant in representing that the latter had a certificate of tax exemption from the Tax Commission. Time and again both on direct and cross-examination, plaintiff asserted that on numerous occasions during the two-year sales and purchase account with the defendant, the latter said he had such a tax exemption, but at no time did the plaintiff insist on having any certificate of exemption displayed to it by defendant. Plaintiff conceded, also, that he had collected a tax from defendant on some deliveries, but not on others. Strange and significant it is that at the final settlement, the question of who owed the tax never was raised by

plaintiff. Strange and significant it is that the Tax Commission's audit showed clearly that the plaintiff had failed to collect the tax from others in the same position as defendant. Also it is strange that even Mr. S., president of the corporation found himself in the same position as defendant, when *he* personally bought material from his own company but for some reason did not pay the tax. The explanation here is that it was a clerical error, which, *when revealed by the State's audit*, was corrected by payment. The trial court was confronted by numerous other items like the one here involved for all of which the plaintiff paid the tax without contest, *after the audit was presented to it.*

With the above abstracted evidence before it, the court found that there was a final settlement of accounts between the two litigants,—or an accord and satisfaction, if you please. We think that no matter what you call it, the defendant is not obligated to pay the tax *to the plaintiff.* It was the primary obligation of the defendant, if there were any tax liability, to the *state*, not *to the plaintiff*, that paid the amount at its own risk, and officiously volunteered to take care of another's debt without the latter's consent or knowledge or opportunity to dispute the obligation. There is no law that we know of that will justify the course of conduct of the plaintiff here and then allow it to recover some-

thing as a *creditor* to which it was not entitled.

The only peg upon which plaintiff can hang its hat is a finding of fact by the trial court that there was an accord *as reflected by plaintiff's books.* This is the basis also, upon which the dissenting opinion is bottomed. There is not a smidgeon of evidence in this record indicating that the parties relied on the account "as reflected by plaintiff's books." Both the plaintiff and the dissent have taken their theses out of context, since the trial court in conclusions of law distinctly and specifically stated that "The note of December 11, 1963, was an accord and satisfaction of any amounts defendant *might* have owed the plaintiff."

The above is simply set forth to reflect that the trial court did not err, even though the basis for the defense was an accord and satisfaction. We have no compunction about the matter except by way of analysis of the transaction.

We think that there is an absolute and positive reason to say that the statute itself is dispositive of this case. The statute, Sec. 59–15–5, Utah Code Annotated 1953, says that:

> \* \* \* provided, however, that where any sale of tangible personal property is made by a wholesaler to a retailer, *upon the representation by the said re-*

*tailer* that the said personal property is purchased by the said retailer for resale, and the said personal property thereafter is not resold, *the wholesaler shall not be responsible for the collection or payment of the tax* imposed on the said sale, *but the said retailer shall be solely liable for the said tax*. (Emphasis added.)

which is quite consonant with the language of Reg. S2 of the Commission that the sales tax:

> is not upon the article sold or furnished, but upon the transaction, and *the purchaser is the actual taxpayer*.

It is obvious from the legislation that the plaintiff should have resisted the Tax Commission's claim based on its audit or paid it, and given the Commission the facts claimed by plaintiff, and thus permit the former to listen to the facts and assess the tax where statutorily it belonged,—on the defendant,—who, in turn, should have had an opportunity to do its own explaining as a possible defense to payment. The cold fact is, that plaintiff has sued the wrong person for a claim as a creditor which it does not have either at common law or under any statute of which we are aware.

We believe and hold that the trial court, on the facts, judiciously pierced the veil of controverted evidence engendered by plaintiff's evidence,—not very satisfactory or perhaps not believable by the trial court,—

and a misconception on the plaintiff's interpretation of controlling legislation.

CALLISTER and TUCKETT, JJ., concur.

CROCKETT, C. J., concurs in the result.

ELLETT, Justice (dissenting):

I cannot agree with the holding of the main opinion. One need go no further than to the findings of the trial court, which were supported by the evidence, in order to be convinced that this case should be reversed. Upon the conclusion of the trial in this matter the court made findings of fact in substance as follows:

(a) The defendant represented to plaintiff that defendant had a sales tax exemption from the State of Utah.

(b) The defendant did not have a sales tax exemption from the State of Utah.

(c) On December 11, 1963, defendant executed a promissory note in favor of plaintiff in the amount of $5,091.72.

(d) It was the intent of both plaintiff and defendant that all amounts then due plaintiff by defendant *as reflected by plaintiff's books* be included in said note.

(e) Subsequently, the State of Utah determined that plaintiff would have to pay taxes on sales made to the defendant.

(f) On December 12, 1964, the plaintiff paid $858.30 by reason of sales made to the defendant.

The trial judge concluded as a matter of law that there was an accord and satisfaction of any and all amounts defendant might have owed to the plaintiff, and he entered a judgment in favor of the defendant for no cause of action.

The main opinion quotes only a part of Sec. 59–15–5, U.C.A.1953, and incorrectly asserts that the appellant was a volunteer in paying a tax owed by the respondent. The following parts of Sec. 59–15–5, U.C.A. 1953, must be considered in determining whether appellant was a volunteer:

Every person receiving any payment or consideration upon a sale of property or service subject to the tax under the provisions of this act, or to whom such payment or consideration is payable (hereinafter called the vendor) shall be responsible for the collection of the amount of the tax imposed on said sale; provided, however, that where any sale of tangible personal property is made by a wholesaler to a retailer, upon the representation by the said retailer that the said personal property is purchased by the said retailer for resale, *and the said personal property thereafter is not resold,* the wholesaler shall not be responsible for the collection or payment of the tax imposed on the said sale, but the said retailer shall be solely liable for the said tax. The vendor shall collect the tax from the vendee, * * * The tax imposed by this act shall be due and payable to the state tax commission quarterly on or before the thirtieth day of the month next succeeding each calendar quarterly period, * * * Every vendor shall on or before the thirtieth day of the month next succeeding each calendar quarterly period, file with the commission a return for the preceding quarterly period. The return shall be accompanied by a remittance of the amount of tax herein required to be collected by the vendor for the period covered by the return. * * * (Emphasis added.)

* * * * * *

Any person failing to pay any tax to the state or any amount of tax herein required to be paid to the state within the time required by this act, or file any return as required by this act, shall pay, in addition to the tax, penalties and interest as provided in section 59–15–8 hereof.

There is no question but what the appellant would have to collect and pay the sales tax on merchandise sold to the respondent in case the respondent was the ultimate consumer. If respondent were a retailer of the goods, the appellant would have to collect and pay unless (a) the respondent had a sales tax exemption or (b) the personal

property sold to the respondent had not been resold.

The Tax Commission determined that appellant had to pay the tax. The trial court found that respondent had no sales tax exemption. However, no finding was made as to whether he was a retailer or ultimate consumer, nor was a finding made as to whether the merchandise was unsold. The trial court did not find that appellant was a volunteer as the main opinion concludes but instead held that there was an accord and satisfaction, and placed his ruling squarely upon that holding.

Now, an accord is a new contract wherein former claims have been settled by a new agreement. There must of necessity be a meeting of the minds of the parties for without that, there can be no new contract and consequently no accord. In view of the false statements of respondent, no charge for sales taxes against him was entered on the books of plaintiff; and on December 11, 1963, when the respondent signed a note, it was, according to the findings of the court, to settle the debts of the defendant *as reflected by the books of the plaintiff*. At that time the plaintiff could not have known that he would be charged for the sales tax on merchandise which he had sold to the defendant. However, the defendant surely knew that he had deceived the plaintiff in causing the plaintiff to make no charges against him for the sales tax on the sales made to him by appellant.

If, contrary to the findings of the court, we suppose that the defendant thought that the note given was to cover all debts due plaintiff arising from their dealings with each other, still he must have known that the plaintiff understood it was only a compromise of the charges as made on the books and did not include the amount of the sales tax. The defendant knowing what was in the mind of the plaintiff had a duty to make known the truth about having no sales tax exemption, and failing to do this, he is held to the agreement as understood by the plaintiff.[1] The accord would, therefore, cover only the charges against the defendant as reflected on plaintiff's books of account.

The law is well settled to the effect that an accord and satisfaction does not operate as a bar to matters not contemplated by the agreement. See 1 C.J.S. Accord and Satisfaction § 45, where cases are collected and the text given containing the following language:

However, an accord and satisfaction does not embrace or operate as a bar in regard to matters not contemplated by the agreement. As to such matters, the parties are not concluded nor are the creditor's rights extinguished. A court

---

1. Corbin on Contracts, § 537.

**96**

of equity should not permit a plea of accord and satisfaction to work an injustice, if there is escape therefrom.

The defendant in relying upon an accord and satisfaction had the burden of proving every element of the new agreement. The findings of the trial court show clearly that defendant failed to sustain his burden.

The main opinion further says, "There was a question of sales tax pending at the time." If this means to say that on December 11, 1963, the date of the accord, there was a matter of taxes pending and known to the parties, the statement can find no support in the record. In fact, the appellant had no knowledge of any pending sales tax until after it had received a letter from the Tax Commission under date of June 30, 1964, wherein the Tax Commission gave notice of a sales tax deficiency resulting from transactions with the respondent.

The respondent by deceit got himself charged with only a part of his just debt, and since he has never paid that debt, he still owes the appellant the amount of money prayed for. I would reverse the judgment of the trial court and remand the case with directions to set aside the judgment for the defendant and to enter a judgment for plaintiff as prayed. Appellant should have its costs.